# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAMARA JOLENE SULLY,

      Plaintiff,

      v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 16-CV-1429-JAR

## MEMORANDUM AND ORDER

Plaintiff Tamara Jolene Sully seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act.[1]  Plaintiff alleges error with regard to the Administrative Law Judge's ("ALJ") assessment of her residual functional capacity ("RFC") and his conclusion that jobs exist in significant numbers in the national economy that Plaintiff can perform.  Finding no error, the Court affirms the Commissioner's decision.

## I.      Factual and Procedural Background

Plaintiff applied for disability insurance benefits on March 26, 2014, alleging an onset date of June 1, 2013, due to her mental disorders.  The Commissioner denied Plaintiff's application upon initial review and upon consideration.  Plaintiff timely requested a hearing before an ALJ.  She appeared and testified at a hearing before ALJ James Harty on September 16, 2015.

---

[1] 42 U.S.C. §§ 401–434.

The ALJ issued an unfavorable decision against Plaintiff on January 21, 2016. He concluded that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and Plaintiff timely filed an appeal with this Court pursuant to 42 U.S.C. § 405(g).

## II.      Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the Court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.      Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6] The Commissioner has established a five-step sequential evaluation process to determine whether a

---

[2] *See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3] *Id.* (quoting *Castellano*, 26 F.3d at 1028).

[4] *Id.*

[5] 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6] *Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

claimant is disabled.[7]  If the ALJ determines the claimant is disabled or not disabled at any step

along the way, the evaluation ends.[8]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful

activity since the alleged onset date.  He determined at step two that Plaintiff has the following

severe impairments: mood disorder and a history of opioid addiction.  He determined at step

three that Plaintiff's impairments did not meet or equal the severity of one of the listed

impairments in 20 CFR 404.1520(d), 404.1525 and 404.1526.  He determined at step four that

Plaintiff was unable to perform her past relevant work (sales clerk at a liquor store, caretaker,

and veterinary technician).  At step five, he determined that Plaintiff has the RFC to perform a

full range of work at all exertional levels but with the following nonexertional limitations:

> The claimant must avoid fast-paced production work and working as an integral
> part of a team.  The claimant is limited to work that involves relatively few
> workplace changes.  The claimant can occasionally interact with supervisors and
> coworkers, but can frequently interact with the general public.[9]

Considering Plaintiff's age, education, work experience, and RFC, the ALJ ultimately concluded

that Plaintiff was not disabled because she could perform a significant number of jobs in the

national economy; specifically, machine finisher, plastics, twisting machine operator, and casting

machine tender.[10]

Plaintiff does not challenge the ALJ's determination at steps one through four.  Plaintiff,

however, challenges the ALJ's step five analysis, arguing that the ALJ erred by: 1) failing to

provide sufficient reasons to discount the disabling portions of an examining physician's opinion

---

[7] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[8] *Id.*

[9] R. at 28.

[10] *Id.* at 33–34.

while adopting other portions of his opinion; and 2) discrediting Plaintiff's statements regarding her symptoms without providing a sufficient explanation.

IV.     **Analysis**

*A.  Dr. Moeller's Opinion*

T.A. Moeller, Ph. D., a consultative licensed psychologist, examined Plaintiff in October 2015.[11]  Dr. Moeller opined, in pertinent part, that:"

> Claimant does not seem to be experiencing any difficulties with activities of daily living, except for social interaction issues.  Social functioning is significantly impaired.  From her description of quitting her last job because she believed someone there wished her harm, this impairment of social functioning appears to be marked.
>
> Ability to communicate and to ask and respond to questions and respond to directions is adequate.  Concentration, persistence, and pace are adequate for dealing in usual situations without any significant stressors.  However, as work place stress increases --- or Claimant's ideas of references are likely to increase.  When that happens, her capacity for communicating with others will decrease, with verbal conflicts likely to occur.  Her ability to deal with work place stress will also diminish, and to diminish her anxiety, she may leave the field and quit her job precipitously.
>
> She appears as someone who will interview well and present as an attractive job applicant for situations in which she has the requisite skills.  However, this evaluator believes it is likely she will not be able to maintain successful employment.[12]

The ALJ gave **some weight** to Dr. Moeller's opinion, but ultimately disagreed with his assessment that Plaintiff would be unable to maintain successful employment due to her inability to deal with work-place stress.[13]  The ALJ explained his reasoning as follows:

> [B]ased on a review of the medical evidence and the claimant's testimony, the claimant's medical condition is stable since taking medication and participating in psychotherapy sessions.  The undersigned further opines that if the cause of the

---

[11] R. at 54–58.

[12] *Id.* at 554.

[13] *Id.* at 31 (emphasis in original).

problem is reduced, such as work place stress from working with others, the claimant is capable of performing full time work if those stresses are limited. Thus, the undersigned finds that the claimant is capable of performing the residual functional capacity herein, which limits her interaction with supervisors and coworkers, and simplifies her work environment: The claimant must avoid fast-paced production work and working as an integral part of a team. The claimant is limited to work that involves relatively few workplace changes. In addition, the claimant can occasionally interact with supervisors and coworkers, but can frequently interact with the general public.[14]

Plaintiff argues the ALJ erred by 1): mischaracterizing Plaintiff's condition as stable without citation to evidentiary support; 2) relying upon Plaintiff's Global Assessment of Functioning ("GAF") scores to conclude Plaintiff's condition was stable; and 3) failing to explain why limiting Plaintiff to a simplified work environment would make her less prone to the marked limitation Dr. Moeller opined she had. The Court finds these arguments unavailing.

First, the ALJ did cite evidentiary support to conclude Plaintiff's condition was stable. He noted "[t]he medical evidence indicates that the claimant has been receiving mental health treatment since approximately July 2013, and [Plaintiff had] stated that with therapy sessions and medications, her symptoms have basically been controlled."[15] He then proceeded to discuss Plaintiff's visit with John Naus, M.D., and her psychiatric treatment at Affiliated Psychiatric, LLC. Treatment notes from Affiliated indicated Plaintiff's condition continued to improve with management of medication and participation in psychotherapy sessions.[16]

The ALJ also relied upon the opinions of two other State agency medical consultants, Drs. E. Bergmann-Harms and Robert L. McRoberts. He noted that "although these licensed psychologists were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, [their] opinions [] deserve

---

[14] *Id.*

[15] *Id.* at 29.

[16] *Id.* at 426–31, 438–49, 490–525, 526–48.

[substantial] weight, particularly . . . where there exist a number of other reasons to reach similar conclusions."[17]  Both of these consultants rated Plaintiff's ability to interact appropriately with the general public as "moderately limited" and explained that "though [Plaintiff] reported to have problems with concentration and interacting with people," her work history at 4Paws Animal Clinic and Tom's Wine & Spirits indicate she is able to stay on task and interact with coworkers.[18]  Dr. McRoberts specifically opined that "[a]t reconsideration, progress notes indicate that the claimant feels hypomanic but remains **stable**."[19]

While an examining consultant's opinion generally garners more weight than a non-examining consultant's opinion, the ALJ may assign whatever weight he deems appropriate so long as he makes clear to any subsequent reviewer the reasons for that weight.[20]  Here, Dr. Moeller stood alone in professionally concluding that Plaintiff would be unable to maintain successful employment.  On the other side were: 1) two medical consultant's contrary opinion, 2) treatment progress notes indicating continued improvement with management of medication and participation in psychotherapy sessions; and 3) no affirmative opinion from a treating medical source that says Plaintiff's symptoms were disabling.  The ALJ also relied on relevant, nonmedical evidence in assigning less weight to Dr. Moeller's opinion: 1) the extent of Plaintiff's activities of daily living; and 2) her former employer's assessment of her work

---

[17] *Id*. at 31.

[18] *Id*. at 83, 95.

[19] *Id*. at 93 (emphasis added).

[20] *Anderson v. Colvin*, 514 F. App'x 756, 761–62 (10th Cir. 2013) (affirming ALJ's decision to not give controlling weight to treating physician's opinion because he made it clear to any subsequent reviewers the reasons for that weight); *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (affirming ALJ's decision to give little weight to opinions of various treating physicians regarding claimant's functional capacity given existence of contrary medical evidence).

abilities.[21]  Neither the liquor store nor the animal clinic reported Plaintiff had difficulties at work.  The animal clinic indicated that Plaintiff generally could cooperate with coworkers as required and that she generally could adapt to work changes without problems.[22]  The animal clinic even stated the reason Plaintiff quit was to leave the state, rather than any medical condition.[23]

Second, as to reliance upon the GAF scores, even if the ALJ erred in relying upon them to conclude her condition was stable, the Court finds any error harmless because the ALJ's conclusion was supported by a number of other substantial evidence.

Third, by limiting Plaintiff to work that involves relatively few workplace changes and a simplified work environment, the ALJ accounted for Dr. Moeller's opinion that Plaintiff was unable to deal with increases in workplace stress.[24]  The Court finds this limitation self-explanatory – change is stressful, and reducing variables decreases change.  And even though some people may feel stress in a simplified work environment, the ALJ did not believe Plaintiff was one of those individuals because he found Plaintiff not entirely credible.  Dr. Moeller depended on Plaintiff's veracity to conclude that Plaintiff had a marked inability to respond appropriately to work stress.  An ALJ may refuse to discount a consultant's opinion for this reason, thus the ALJ did not have to accommodate this alleged marked limitation.[25]

---

[21] R. at 31, 236–39, 250–52.

[22] *Id*. at 238.

[23] *Id*. at 239 ("Employee quit to leave the state.").

[24] *See Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work."); *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016).

[25] *Oldham*, 509 F.3d at 1257 (finding ALJ's refusal to credit opinions of treating and examining medical providers that depended on claimant's veracity proper when ALJ's credibility determination supported by substantial evidence).

The Court finds sufficient evidence supports the ALJ's findings.[26]  Although the evidence may also have supported contrary findings, the Court will not displace the ALJ's choice between two fairly conflicting views, even though the Court could make a different choice had the matter been before it *de novo*.[27]

### B.  The ALJ's Credibility Determination

The ALJ found Plaintiff's subjective complaints "somewhat exaggerated and [] inconsistent with the other evidence, including the clinical and objective findings of record."[28] The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible for the reasons explained in this decision."[29]  Plaintiff argues the ALJ's credibility determination was erroneous because: 1) her ability to perform daily living activities does not demonstrate that she can handle the stresses of a full-time job; 2) the ALJ recited boilerplate language to discredit Plaintiff's testimony; 3) he improperly relied upon her GAF scores to measure the severity of her mental disorder; and 4) he failed to consider the lack of significant improvement in her symptoms despite the frequency she sought treatment.  The Court rejects these arguments.

First, the Court agrees with Plaintiff that sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.[30] Even so, a claimant's daily living activities is among the many factors an ALJ may consider in

---

[26] *Id*. (explaining reviewing courts review the sufficiency of the evidence, not its weight).

[27] *Id*. at 1257–58.

[28] R. at 29.

[29] *Id*. at 31–32.

[30] *Thompson*, 987 F.2d at 1490.

determining the claimant's credibility.[31]  But while the ALJ should not place too much reliance upon daily living activities in determining RFC, in assessing credibility, the ALJ may properly consider a claimant's self-reported daily activities, when those reports are inconsistent with the claimant's testimony before the ALJ.[32]  The Court finds the ALJ properly considered the extent of her admitted daily activities to discredit Plaintiff's testimony.  Plaintiff's ability to take care of personal business within the community, drive, work part-time, care for two pet dogs, and handle her personal finances demonstrate an ability to cope with stress.

Second, as to the use of boilerplate language, it "is problematic only when it appears 'in the absence of a more thorough analysis.'"[33]  Here, contrary to Plaintiff's assertion, the ALJ did not only spout boilerplate language.  The ALJ's decision shows that after articulating his RFC finding, he listed the factors set out in 20 C.F.R. §§ 404.1529 and 416.929, explained the evidence he considered in making that finding, and connected the credibility factors to evidence in the record.  For example, the ALJ noted the following: 1) Plaintiff's medical record indicated that her symptoms have been basically controlled; 2) Plaintiff's medical condition improved when she takes medication regularly as evidenced by her GAF scores and her own testimony; 3) despite her symptoms, Plaintiff continued to work; 4) Plaintiff's daily living activities after the alleged onset date were inconsistent with her allegations of disability; 5) several non-examining medical consultants opined that Plaintiff could work; 6) Plaintiff's former employers did not

---

[31] *Luna v. Bowen*, 834 F.2d 161, 166 (10th Cir. 1987) (explaining a claimant's daily activities, and the dosage, effectiveness, and side effects of medication are factors for consideration in credibility determination); 20 C.F.R. § 404.1529(c)(3) (listing factors relevant in assessing a claimant's statements regarding his or her symptoms, including activities of daily living); 20 C.F.R § 416.929(c) (same).

[32] *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992).

[33] *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1170 (10th Cir. 2012) (citing *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)).

report that she had any difficulties at work, and 7) no treating medical source had opined that Plaintiff's symptoms and medical condition were disabling.[34]

Third, even if GAF scores may not be used to measure the severity of a mental disorder, an ALJ may consider them in assessing the credibility of a claimant's statements as they constitute "any measures other than medication used to relieve . . . symptoms" or "any other factors concerning functional limitations and restrictions."[35]  Additionally, improvements in Plaintiff's GAF scores indicate the effectiveness of the treatment she received, which is also a factor the ALJ may consider.[36]  In any case, the ALJ's citation to other evidence to support his credibility findings render any error based on the GAF scores harmless.

Finally, as to the frequency of treatment and Plaintiff's claim of lack of significant improvement, the Court finds Plaintiff's characterization not the only reasonable understanding of the facts.[37]  As the ALJ noted, despite her symptoms, Plaintiff continued to work and her condition improved with treatment and had "basically been controlled."[38]  These were all factors the ALJ properly relied upon in assessing credibility.[39]  Giving the ALJ's credibility finding due deference, the Court finds no error in the ALJ's credibility analysis.[40]

---

[34] R. at 29–32.

[35] 20 C.F.R. § 404.1529(c)(3)(vi) and (vii).

[36] *Luna*, 834 F.2d at 166 (explaining effectiveness of treatment is a for consideration in credibility determination).

[37] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (explaining that a court  may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*).

[38] R. at 29–30.

[39] *Moses v. Barnhart*, 321 F. Supp. 2d 1224, 1231 (D. Kan. 2004) ("Frequency of medical contacts is an appropriate factor in determining plaintiff's credibility.").

[40] *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir.1990) ("Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."); *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994) (stating courts normally defer to the ALJ on matters involving the credibility of witnesses).

**V.**     **Conclusion**

The ALJ's RFC and credibility determinations are supported by substantial competent evidence.  Plaintiff has not shown that the ALJ's decision is inconsistent with the Social Security Act, regulations, and applicable case law.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's decision denying Plaintiff disability benefits is AFFIRMED.

**IT IS SO ORDERED.**

Dated: June 27, 2017

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE